## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Angel Navarro, R09328 | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. _____ |
| | ) |
| Wexford Health Sources, Inc., John Trost, M.D., | ) |
| Steven Ritz, M.D., and Mohammed Siddiqui, | ) |
| M.D., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR INJUNCTIVE
## AND MONETARY RELIEF AND JURY DEMAND

NOW COMES the Plaintiff, Angel Navarro, R09328, by and through his attorney, Thomas J. Pliura, M.D., J.D., and complaining of Defendants Wexford Health Sources, Inc., John Trost, M.D., Steven Ritz, M.D., and Mohammed Siddiqui, M.D., respectfully states as follows:

### General Allegations
### Parties

1. At all times relevant hereto, Plaintiff was and is an inmate of the Illinois Department of Corrections (IDOC) and housed at Menard Correctional Center.

2. At all times relevant hereto, Defendant Wexford Health Sources, Inc., was and is a Florida For-Profit Corporation authorized to do business in Illinois or otherwise doing business in Illinois, and engaged in the practice of providing contracted health care services to inmates of the IDOC, including Menard Correctional Center.

3. At all times relevant hereto, Defendant John Trost, M.D., was and is a physician, licensed to practice medicine by the State of Illinois, an agent or employees of Co-Defendant Wexford, and engaged in the practice of providing medical care services to inmates of the IDOC including the Plaintiff herein.

1

4. At all times relevant hereto, Defendant Mohammed Siddiqui, M.D., was and is a physician, licensed to practice medicine by the State of Illinois, an agent or employees of Co-Defendant Wexford, and engaged in the practice of providing medical care services to inmates of the IDOC including the Plaintiff herein.

5. At all times relevant hereto, Defendant Steven Ritz, M.D., was and is a trained physician, formerly licensed to practice medicine by the State of Illinois, who thereafter was an agent or employees of Co-Defendant Wexford, and engaged in the collegial review process for Wexford, through which he made treatment authorization or denial determinations for medical care services to inmates of the IDOC including the Plaintiff herein.

6. Other individuals were also involved in the care and treatment of Plaintiff, as documented in the applicable medical records. However, the identities and licensure of those individuals remains undetermined due to limited information currently available to Plaintiff and the use of handwritten signatures without printed names and licensures.

**Venue**

7. Venue is proper under 28 U.S. Code  1391 (b)(1) as the district of residence, at the time this action was initially filed, of one or more defendants and under Section 1391 (b)(2) as the District in which a substantial part of the events giving rise to the claim occurred.

**Jurisdiction**

8. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 1343 because the claim raises Federal Questions as to the deprivation of Plaintiff's rights under 42 U.S.C. § 1983 and under the Eight Amendment to the Constitution.

**Common Factual Allegations**

2

9. In 2011, Defendant Wexford Health Sources, Inc. entered into a 10-year, $1.36 billion contract with the State of Illinois to provide health care services to Illinois prison inmates.

10. As an inmate of the Department of Corrections, Plaintiff's only access to medical care is through the prison healthcare system governed by Wexford.

11. At all times relevant hereto, Defendant Wexford utilized a system in which its employed or contracted physicians could not directly make a referral of an inmate for specialty care services including certain diagnostic procedures or surgical consultation without the permission of Wexford through a review process known as "collegial review".

12. Plaintiff entered the IDOC system in 2005.

13. On or about December 13, 2016, while playing basketball, at Menard, Plaintiff suffered an acute injury to his left ankle. (See attached group exhibit 1 at R1)

14. A correctional officer arranged to have plaintiff evaluated by the prison health clinic unit staff.

15. On or about Dec. 15, 2016, Plaintiff was first seen at the Menard health center by a currently unidentified care provider. At that time, Plaintiff had no feeling in his foot. There was extensive bruising noted to the left heel. Plaintiff had pain with palpation over his left Achilles tendon. He was described as being unable to flex his foot. The provider's assessment was a possible Achilles tendon rupture. An x-ray of the ankle was ordered and the Plaintiff was recommended for referral outside the prison for an MRI of the injured lower extremity. (R1)

16. On information and belief, Plaintiff was not seen by a physician but was instead seen by a nurse. He claims he was not provided crutches or any type of splint or immobilization boot to stabilize his left lower leg and ankle. He was forced to walk on his injured left ankle, with the ruptured Achilles tendon.

3

17. At all times relevant hereto, Defendant Wexford had a written policy pertaining to treatment of patients with a ruptured Achilles tendon, requiring urgent referral of the patient to an orthopedic specialist, splinting, and crutches. (R56)

18. On or about Dec. 16, 2016, the x-ray report indicated Plaintiff was to be evaluated for an Achilles tear.  A follow up MRI of the ankle was advised by the radiologist to further evaluate the Achilles tendon. (R2)

19. On or about Dec. 20, 2016, Defendant Trost presented the patient for "collegial review", seeking approval from Wexford for the MRI. (R3)   Wexford denied the request for an MRI. An ultrasound of the left Achilles was proposed as an alternative.

20. A medical furlough note indicated Plaintiff was supposed to have a splint to keep the Achilles immobile and for him to remain non-weight bearing. However, he was never provided a splint and he was never provided any crutches.  He was forced to walk on his injured left ankle and the ruptured Achilles tendon since the injury occurred.

21. On or about Dec. 22, 2016, Plaintiff was evaluated by Defendant Mohamed Siddiqui, M.D. Dr. Siddiqui found Plaintiff's range of motion in the left ankle restricted. (R4) There was pain, swelling and bruising in the left foot. Plaintiff was unable to move his foot up and down, or sideways. The note indicates the request for MRI had been rejected at "collegial review", by Wexford. No reason was given for the basis of the rejection. Plaintiff was still awaiting the ultrasound. (R5) He still had not been provided or placed on crutches. He was not provided a splint. His ankle was not immobilized. He was forced to continue to walk on the injured extremity.

22. On or about Jan. 17, 2017Plaintiff was again seen by a physician at Menard. The note indicated Plaintiff was walking with a limp. He had pain in the ankle. (R7) They were

still awaiting the ultrasound of the Achilles tendon. There was a follow-up planned in 2 weeks. (The name of the provider is not legible) The patient was not provided or placed on crutches. He was not provided a splint. He was forced to continue to walk on the injured extremity.

23. As of Jan. 19, 2017, Plaintiff had still not received an ultrasound of his Achilles tendon injury. (R8)  A repeat x-ray of the left ankle was ordered. There was history of chronic pain. The x-ray report, dated Jan. 23, showed little change noted in the x-rays since the prior x-ray of 12/16 (R10).

24. On Jan. 30, 2017, Plaintiff was seen again by Dr. Siddiqui.  He was found to have restricted range of motion at the left ankle. An ultrasound had still not been performed. (R9) The note indicated "Achilles tendon injury" had occurred 6 weeks earlier. Plaintiff was still not provided or placed on crutches. He was not provided a splint. He was forced to continue to walk on the injured extremity and ruptured Achilles tendon.

25. The on Feb. 16, 2017 the ultrasound of the left Achilles tendon was performed, (R11) now more than two (2) months after the original injury date of Dec. 13, 2016. The ultrasound showed complete rupture of the Achilles tendon, with retracted proximal stumps. There was marked thickening of the retracted proximal and distal stumps, consistent with severe underlying tendinosis. (R11). A complete rupture of the Achilles tendon was noted at approximately 4.6 cm above the calcaneal insertion. A prominent gap was noted due to the rupture with a contour deformity.  And still Plaintiff was not provided or placed on crutches. He was not provided a splint. He was forced to continue to walk on the injured extremity.

26. On or about Feb. 22, 2017, Dr. Trost ordered an orthopedic consult. (R13).  Another "collegial review" was scheduled for March 1, for the purpose of determining whether an orthopedic consult was warranted. (R15)  The note indicates Dr. Ritz was to review the request for referral and make a decision. (R15).

27. On or about March 7, 2017, Plaintiff was scheduled for orthopedic consult on March 16, 2017. (R19)

28. On March 9, 2017, Plaintiff filed a formal grievance complaining he had not been receiving adequate healthcare. He complained of pain and inability to perform normal activities and simple tasks. He could not walk normally, he could not jog. He complained they had failed to appropriately follow-up on his left Achilles injury. (R20-21)

29. On or about March 16, 2017, Plaintiff was evaluated by the office of orthopedic surgeon, John Wood, M.D. (R22) He was identified as having an Achilles tendon rupture. He had left ankle pain with weakness on his left side with aching. (R23)  He was noted to have pain with dorsiflexion, as well as weakness. Physical therapy was recommended.

30. On or about March 20, 2017, Dr. Siddiqui ordered physical therapy, as recommended by Dr. Wood. (R26) Dr. Siddiqui also ordered orthopedic follow-up (R27)

31. On March 29, 2017, Plaintiff wrote a letter to Ms. Allsup seeking information on the status of his grievance. (R31)  As of that date, he had still not started physical therapy (R32) The note indicated  he "will be scheduled soon." (R32)

32. On or about April 20, 2017, Plaintiff was again seen at the Orthopedic Institute of Southern Illinois. The note indicates he had not had any physical therapy during the last sixty (60) days.  An orthopedic test indicated rupture of the Achilles tendon. He was

6

noted to have gait abnormalities. He was seen by physical therapist, Eric Osman, MPT, ATC. (R38-41)

33. A response by the grievance officer denying Plaintiff's grievance was issued on April 25, 2017. (R43) On May 11, 2017, the Chief Administrative Officer concurred.

34. On or about June 1, 2017, Plaintiff's condition was again presented to collegial review for orthopedic consult. It was approved, and the note indicates he was to be scheduled soon. (R50)

35. On or about June 6, 2017, the records indicate Plaintiff complained he is not getting any better, despite the physical therapy. (R50). He was noted to have a limp when walking. He was still having pain.

36. On or about August 23, 2017, the Administrative Review Board formally denied the patients' grievance.  (R54)

37. As of this filing, Plaintiff has not undergone surgery for repair of his ruptured Achilles tendon, he has never had the foot immobilized.

**Count I**

Plaintiff complains of Defendants John Trost, M.D., and Wexford Health Sources, as follows:

1. -   37, Plaintiff realleges paragraphs 1-37 of the common allegations above as paragraphs 1-37 of this Count I.

38. With respect to the care and treatment of the Plaintiff as alleged herein, it was then and there the duty of Defendant Trost to use that degree of skill and care of a reasonable careful physician practicing in a similar setting.

39. Notwithstanding said duty, Defendant Trost was guilty of one or more of the following careless and negligent acts or omissions which directly and proximately caused injury to the Plaintiff:

   a. Failing to properly and timely evaluate, treat and diagnose plaintiff's serious medical condition;

   b. Failing to urgently refer Plaintiff for orthopedic consult.

   c. Failing to ensure Plaintiff received a necessary MRI.

   d. Failing to order and secure crutches, and immobilization of Plaintiff's foot/ankle.

   e. Failing to follow Wexford's written policy for Achilles injury.

   a. Failing or refusing to ensure Plaintiff received necessary specialty care,

   b. Persisting in a course of treatment known to be ineffective,

   c. Deferring individual clinical judgment to non-treating medical professionals at Defendant Wexford through the collegial review process,

   d. Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

   e. Failing to appeal or otherwise circumvent the collegial review process when the decisions rendered were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

   f.  Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

40. Under the doctrine of *Respondeat Superior*, Defendant Wexford is liable for the deliberate indifference of its employee and agent, Dr. Trost, as alleged herein.

8

41. Additionally, Defendant Wexford was directly negligent through one or more of the following careless and negligent acts or omissions that directly and proximately caused injury to the Plaintiff:

   a. Maintaining a policy or practice that prohibits its physicians, nurses and nurse practitioners from urgently or emergently referring inmates outside the prison for necessary diagnostic imaging, testing, specialty consultation and/or and surgery.

   b. Maintaining a policy or practice that denies or delays MRI or other necessary imaging for suspected Achilles tendon rupture.

   c. Maintained a policy or procedure of "collegial review" wherein physicians who have not examined or treated a patient are given authority to deny care recommended by a patient's treating physician.

   d. Maintaining a policy or procedure that improperly limits or delays surgical referrals for urgent or emergent medical needs.

   e. Ignoring Wexford's own written policies in favor of clinically inappropriate denials, delays and ineffective cheaper alternatives.

42. Maintaining a policy or procedure that requires utilization of conservative treatment options over surgical options long after the standard of care would require a determination that conservative alternatives are ineffectual

43. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of

any eventual restorative treatment, likely substantial permeant disability and other

damages for which Defendants are liable.

44. An attorney's certificate of merit and report of reviewing physician, as required by 735

ILCS 5/2-622 is attached hereto and incorporated herein.

WHEREFORE Plaintiff, Angel Navarro, prays for judgment in his favor and against Defendants

John Trost, M.D., and Wexford Health Sources, Inc., in an amount in excess of seventy-five

thousand dollars ($75,000.00), together with his costs of suit, and such other and further relief as

this court may deem proper.

## Count II

Plaintiff complains of Defendants John Trost, M.D. and Wexford Health Sources, Inc., as

follows:

1.  -  37.  Plaintiff realleges paragraphs 1-37 of the common allegations above as

paragraphs 1-37 of this Count II.

39.  Deliberate indifference to a serious medical need violates an inmate's right under the

Eighth Amendment of the Constitution of the United States to be free from cruel and

unusual punishment.

40. By reason of his examinations of Plaintiff and review of medical records, Defendant

Trost knew that Plaintiff had a serious medical need and consciously disregarded that

need by failing to take reasonable measures to properly and timely address it.

41. With respect to the care and treatment needs of Plaintiff as alleged above, Defendant

acted with deliberate indifference to a serious medical need of the Plaintiff by, *inter alia*;

a.  Failing to properly and timely evaluate, treat and diagnose plaintiff's serious

medical condition;

b.  Failing to urgently refer Plaintiff for orthopedic consult.

c.  Failing to ensure Plaintiff received a necessary MRI.

d.  Failing to order and secure crutches, and immobilization of Plaintiff's foot/ankle.

e.  Failing to follow Wexford's written policy for Achilles injury.

f.  Failing or refusing to ensure Plaintiff received necessary specialty care,

g.  Persisting in a course of treatment known to be ineffective,

h.  Deferring individual clinical judgment to non-treating medical professionals at Defendant Wexford through the collegial review process,

i.  Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

j.  Failing to appeal or otherwise circumvent the collegial review process when the decisions rendered were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

k.   Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

42. Under the doctrine of *Respondeat Superior*, Defendant Wexford is liable for the deliberate indifference of its employee and agent, Dr. Trost, as alleged herein.[1]

---

[1] Under the analysis detailed in *Shields v Illinois Department of Corrections*, 746 F.3d 782 (7th Cir., 2014), the principle that Wexford could not be held vicariously liable for the deliberate indifference of its employees, is no longer viewed by the Seventh Circuit Court of Appeals as an appropriate extension of the *Monell* doctrine (that *respondeat superior* is not a basis for rendering municipalities liable under §1983 for the constitutional torts of their employees. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct.  2018, 56 L. Ed. 2d 611 (1978) as previously held in *Village of Forest Park v. Iskander*, 690 F.2d 126 (7th Cir. 1982)).

43. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of any eventual restorative treatment, likely substantial permeant disability and other damages for which Defendants are liable.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

A)  Injunctive Relief in the form of an order compelling Defendants to afford him proper, complete, medical care including, referral outside of the prison healthcare system for specialty services when warranted and all other necessary medical care.

B)  Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,

C)  Punitive Damages appropriate to deter Defendants' wrongful conduct;

D)  Attorney fees under 42 U.S.C.§ 1988; and

E)  Such other and further relief as this Court may deem proper.

## Count III

Plaintiff complains of Defendants Steven Ritz, M.D., and Wexford Health Sources, Inc., as follows:

1.  -  37.  Plaintiff realleges paragraphs 1-37 of the common allegations above as paragraphs 1-37 of this Count III.

38. With respect to the care and treatment of the Plaintiff as alleged herein, it was then and there the duty of Defendant Ritz to use that degree of skill and care of a reasonable careful physician practicing in a similar setting.

39. Notwithstanding said duty, Defendant Ritz was guilty of one or more of the following careless and negligent acts or omissions which directly and proximately caused injury to the Plaintiff:

    a.  Failing to urgently refer Plaintiff for orthopedic consult.

    b.  Failing to ensure Plaintiff received a necessary MRI.

    c.  Failing to order and secure crutches, and immobilization of Plaintiff's foot/ankle.

    d.  Failing to follow Wexford's written policy for Achilles injury.

    e.  Failing or refusing to ensure Plaintiff received necessary specialty care,

    f.  Persisting in a course of treatment known to be ineffective,

    g.  Substituting his individual clinical judgment as a non-treating unlicensed medical professionals for that of the licensed treating physicians through the collegial review process,

    h.  Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

    i.  Rendering decisions in the collegial review process which were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

    j.  Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

40. Under the doctrine of *Respondeat Superior*, Defendant Wexford is liable for the deliberate indifference of its employee and agent, Dr. Ritz, as alleged herein.

41. Additionally, Defendant Wexford was directly negligent through one or more of the following careless and negligent acts or omissions that directly and proximately caused injury to the Plaintiff:

13

a.  Maintaining a policy or practice that prohibits its physicians, nurses and nurse practitioners from urgently or emergently referring inmates outside the prison for necessary diagnostic imaging, testing, specialty consultation and/or and surgery.

b.  Maintaining a policy or practice that denies or delays MRI or other necessary imaging for suspected Achilles tendon rupture.

c.  Maintained a policy or procedure of "collegial review" wherein physicians who have not examined or treated a patient are given authority to deny care recommended by a patient's treating physician.

d.  Maintaining a policy or procedure that improperly limits or delays surgical referrals for urgent or emergent medical needs.

e.  Ignoring Wexford's own written policies in favor of clinically inappropriate denials, delays and ineffective cheaper alternatives.

42. Maintaining a policy or procedure that requires utilization of conservative treatment options over surgical options long after the standard of care would require a determination that conservative alternatives are ineffectual

43. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of any eventual restorative treatment, likely substantial permeant disability and other damages for which Defendants are liable.

44. An attorney's certificate of merit and report of reviewing physician, as required by 735 ILCS 5/2-622 is attached hereto and incorporated herein.

14

WHEREFORE Plaintiff, Angel Navarro, prays for judgment in his favor and against Defendants Steven Ritz and Wexford Health Sources, Inc, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with his costs of suit, and such other and further relief as this court may deem proper.

### Count IV

Plaintiff complains of Defendants Steven Ritz, M.D., and Wexford Health Sources, Inc, as follows:

1. -   37.  Plaintiff realleges paragraphs 1-37 of the common allegations above as paragraphs 1-37 of this Count IV.

38.  Deliberate indifference to a serious medical need violates an inmate's right under the Eighth Amendment of the Constitution of the United States to be free from cruel and unusual punishment.

39. By reason of his review of medical records, Defendant Ritz knew that Plaintiff had a serious medical need and consciously disregarded that need by failing to take reasonable measures to properly and timely address it.

40. With respect to the care and treatment needs of Plaintiff as alleged above, Defendant acted with deliberate indifference to a serious medical need of the Plaintiff by, *inter alia*;

    a.  Failing to urgently refer Plaintiff for orthopedic consult.

    b.  Failing to ensure Plaintiff received a necessary MRI.

    c.  Failing to order and secure crutches, and immobilization of Plaintiff's foot/ankle.

    d.  Failing to follow Wexford's written policy for Achilles injury.

    e.  Failing or refusing to ensure Plaintiff received necessary specialty care,

    f.  Persisting in a course of treatment known to be ineffective,

g.  Substituting his individual clinical judgment as a non-treating unlicensed medical professionals for that of the licensed treating physicians through the collegial review process,

h.  Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

i.  Rendering decisions in the collegial review process which were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

j.  Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

41. Under the doctrine of *Respondeat Superior*, Defendant Wexford is liable for the deliberate indifference of its employee and agent, Dr. Ritz, as alleged herein.[2]

42. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of any eventual restorative treatment, likely substantial permeant disability and other damages for which Defendants are liable.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

---

[2] Under the analysis detailed in *Shields v Illinois Department of Corrections*, 746 F.3d 782 (7th Cir., 2014), the principle that Wexford could not be held vicariously liable for the deliberate indifference of its employees, is no longer viewed by the Seventh Circuit Court of Appeals as an appropriate extension of the *Monell* doctrine (that *respondeat superior* is not a basis for rendering municipalities liable under §1983 for the constitutional torts of their employees. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct.  2018, 56 L. Ed. 2d 611 (1978) as previously held in *Village of Forest Park v. Iskander*, 690 F.2d 126 (7th Cir. 1982)).

16

A) Injunctive Relief in the form of an order compelling Defendants to afford him proper, complete, medical care including, referral outside of the prison healthcare system for specialty services when warranted and all other necessary medical care.

B) Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,

C) Punitive Damages appropriate to deter Defendants' wrongful conduct;

D) Attorney fees under 42 U.S.C.§ 1988; and

E) Such other and further relief as this Court may deem proper.

## Count V

Plaintiff complains of Defendants Mohammed Siddiqui, M.D., and Wexford Health Sources, Inc., as follows:

1. - 37. Plaintiff realleges paragraphs 1-37 of the common allegations above as paragraphs 1-37 of this Count V.

38. With respect to the care and treatment of the Plaintiff as alleged herein, it was then and there the duty of Defendant Siddiqui to use that degree of skill and care of a reasonable careful physician practicing in a similar setting.

39. Notwithstanding said duty, Defendant Siddiqui was guilty of one or more of the following careless and negligent acts or omissions which directly and proximately caused injury to the Plaintiff:

    a. Failing to properly and timely evaluate, treat and diagnose plaintiff's serious medical condition;

    b. Failing to urgently refer Plaintiff for orthopedic consult.

    c. Failing to ensure Plaintiff received a necessary MRI.

17

    d.   Failing to order and secure crutches, and immobilization of Plaintiff's foot/ankle.

    e.   Failing to follow Wexford's written policy for Achilles injury.

    f.   Failing or refusing to ensure Plaintiff received necessary specialty care,

    g.   Persisting in a course of treatment known to be ineffective,

    h.   Deferring individual clinical judgment to non-treating medical professionals at Defendant Wexford through the collegial review process,

    i.   Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

    j.   Failing to appeal or otherwise circumvent the collegial review process when the decisions rendered were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

    k.   Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

40. Under the doctrine of *Respondeat Superior*, Defendant Wexford is liable for the deliberate indifference of its employee and agent, Dr. Siddiqui, as alleged herein.

41. Additionally, Defendant Wexford was directly negligent through one or more of the following careless and negligent acts or omissions that directly and proximately caused injury to the Plaintiff:

    a.   Maintaining a policy or practice that prohibits its physicians, nurses and nurse practitioners from urgently or emergently referring inmates outside the prison for necessary diagnostic imaging, testing, specialty consultation and/or and surgery.

    b.   Maintaining a policy or practice that denies or delays MRI or other necessary imaging for suspected Achilles tendon rupture.

    c.   Maintained a policy or procedure of "collegial review" wherein physicians who have not examined or treated a patient are given authority to deny care recommended by a patient's treating physician.

    d.   Maintaining a policy or procedure that improperly limits or delays surgical referrals for urgent or emergent medical needs.

    e.   Ignoring Wexford's own written policies in favor of clinically inappropriate denials, delays and ineffective cheaper alternatives.

42. Maintaining a policy or procedure that requires utilization of conservative treatment options over surgical options long after the standard of care would require a determination that conservative alternatives are ineffectual.

43. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of any eventual restorative treatment, likely substantial permeant disability and other damages for which Defendants are liable.

44. An attorney's certificate of merit and report of reviewing physician, as required by 735 ILCS 5/2-622 is attached hereto and incorporated herein.

WHEREFORE Plaintiff, Angel Navarro, prays for judgment in his favor and against Defendants Mohammed Siddiqui, M.D., and Wexford Health Sources, Inc., in an amount in excess of seventy-five thousand dollars ($75,000.00), together with his costs of suit, and such other and further relief as this court may deem proper.

**Count VI**

19

Plaintiff complains of Defendants Mohammed Siddiqui, M.D., and Wexford Health Sources, Inc., as follows:

1. - 37.  Plaintiff realleges paragraphs 1-37 of the common allegations above as paragraphs 1-34 of this Count VI.

38.  Deliberate indifference to a serious medical need violates an inmate's right under the Eighth Amendment of the Constitution of the United States to be free from cruel and unusual punishment.

39. By reason of his examinations of Plaintiff and review of medical records, Defendant Siddiqui knew that Plaintiff had a serious medical need and consciously disregarded that need by failing to take reasonable measures to properly and timely address it.

40. With respect to the care and treatment needs of Plaintiff as alleged above, Defendant acted with deliberate indifference to a serious medical need of the Plaintiff by, *inter alia*;

   a. Failing to properly and timely evaluate, treat and diagnose plaintiff's serious medical condition;

   b. Failing to urgently refer Plaintiff for orthopedic consult.

   c. Failing to ensure Plaintiff received a necessary MRI.

   d. Failing to order and secure crutches, and immobilization of Plaintiff's foot/ankle.

   e. Failing to follow Wexford's written policy for Achilles injury.

   f. Failing or refusing to ensure Plaintiff received necessary specialty care,

   g. Persisting in a course of treatment known to be ineffective,

   h. Deferring individual clinical judgment to non-treating medical professionals at Defendant Wexford through the collegial review process,

20

i.  Rendering diagnosis and treatment decisions constituting such a substantial departure from accepted professional judgment, practice, or standards that the treatment is not based on professional judgment,

j.  Failing to appeal or otherwise circumvent the collegial review process when the decisions rendered were contrary to accepted medical standards and/or jeopardized the health and well-being of the Plaintiff,

k.  Otherwise failing to take reasonable measures to address Plaintiff's serious condition.

41. Under the doctrine of *Respondeat Superior*, Defendant Wexford is liable for the deliberate indifference of its employee and agent, Dr. Siddiqui, as alleged herein.[3]

42. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of any eventual restorative treatment, likely substantial permeant disability and other damages for which Defendants are liable.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

---

[3] Under the analysis detailed in *Shields v Illinois Department of Corrections*, 746 F.3d 782 (7th Cir., 2014), the principle that Wexford could not be held vicariously liable for the deliberate indifference of its employees, is no longer viewed by the Seventh Circuit Court of Appeals as an appropriate extension of the *Monell* doctrine (that *respondeat superior* is not a basis for rendering municipalities liable under §1983 for the constitutional torts of their employees. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct.  2018, 56 L. Ed. 2d 611 (1978) as previously held in *Village of Forest Park v. Iskander*, 690 F.2d 126 (7th Cir. 1982)).

A) Injunctive Relief in the form of an order compelling Defendants to afford him proper, complete, medical care including, referral outside of the prison healthcare system for specialty services when warranted and all other necessary medical care.

B) Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,

C) Punitive Damages appropriate to deter Defendants' wrongful conduct;

D) Attorney fees under 42 U.S.C.§ 1988; and

E) Such other and further relief as this Court may deem proper.

## Count VII

Plaintiff complains of Defendant Wexford Health Sources, Inc., as follows:

1. - 37. Plaintiff realleges paragraphs 1-37 of the common allegations above as paragraphs 1-37 of this Count VII.

38. Deliberate indifference to a serious medical need violates an inmate's right under the Eighth Amendment of the Constitution of the United States to be free from cruel and unusual punishment.

39. At all times relevant hereto, it was the policy of Defendant Wexford, either through an official policy or decision by a policy-making authority or through a long-standing and widespread custom or practice to deny or delay referral for specialty medical and surgical consults and services.

40. Notwithstanding Plaintiff's 8th Amendment rights and with deliberate indifference thereto, Defendant, by policy and though its collegial review process, denied and delayed needed radiology (MRI) specialty services and denied or delayed needed specialty medical care in favor of ineffectual treatments and/or outright denial of necessary care.

41. Policy-making officials at Wexford knew, or in the exercise of reasonable supervisory activities, should have known that that its policy or practice of denying or delaying necessary medical care and making decisions based upon cost rather than clinical need would and did cause substantial injury and permanent disability to the Plaintiff.

42. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of any eventual restorative treatment, likely substantial permeant disability and other damages for which Defendants are liable.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

A) Injunctive Relief in the form of an order compelling Defendant to afford him proper, complete, medical care including, referral outside of the prison healthcare system for specialty services when warranted and all other necessary medical care.

B) Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,

C) Punitive Damages appropriate to deter Defendant's wrongful conduct;

D) Attorney fees under 42 U.S.C.§ 1988; and

E) Such other and further relief as this Court may deem proper.

## Count VIII

Plaintiff complains of Defendant Wexford Health Sources, Inc., as follows:

1. - 37. Plaintiff realleges paragraphs 1-37 of the common allegations above as paragraphs 1-37 of this Count VIII.

23

38. In furtherance of its contract with the state to provide health care services to prison inmates, Wexford employs and/or contracts with Illinois-licensed physicians, physician's assistants, nurse practitioners and nurses who, in turn provide care to the inmates.

39. However, Wexford supersedes the independent professional clinical judgment of its employed or contracted physicians, nurse practitioners, physician's assistants and nurses through the imposition of practice policies, procedures and guidelines directing the examination, diagnosis, care and treatment of inmates, including the plaintiff, even where said care is contrary to the independent professional judgment of the licensed physician, nurse practitioner, physician's assistant and/or nurse.

40. Further, Wexford supersedes the independent professional clinical judgment of its employed or contracted physicians, nurse practitioners, physician's assistants and nurses through the collegial review process where physicians not licensed in Illinois and having never personally provided examination or care to the inmate patient are vested with the authority to make treatment decisions.

41. Said activities, as described in paragraphs 27 and 28 above violate the Corporate Practice of Medicine Doctrine, the Medical Practice Act of 1987 (225 ILCS 60 *et seq*.), the Physician Assistant Practice Act of 1987 (225 ILCS 95 *et seq*.), and the Nurse Practice Act (225 ILCS 65 *et seq*.).

42. As a direct and proximate result of the aforesaid careless and negligent acts or omissions of the defendant as alleged above, Plaintiff was caused to incur a critical delay in the diagnosis and treatment of his condition, significant additional pain and loss of function, a significant worsening of his condition, a substantial lessening of the effectiveness of

any eventual restorative treatment, likely substantial permeant disability and other damages for which Defendants are liable.

WHEREFORE, Plaintiff prays for judgment in his favor and for the following relief:

A) Injunctive Relief in the form of an order compelling Defendant to afford plaintiff proper, complete, medical care including, referral to a physician and/or referral outside of the prison healthcare system as warranted and determined by his state-licensed medical providers without interference by Wexford directly or via its policies, procedures and guidelines and without interference by unlicensed individuals including those participating in the collegial review process.

B) Monetary Relief in the form of money damages in excess of $75,000.00 adequate to compensate him for his damages,

C) Punitive Damages appropriate to deter Defendant's wrongful conduct;

D) Attorney fees; and

E) Such other and further relief as this Court may deem proper.

By: s/THOMAS J. PLIURA_____
Angel Navarro, Plaintiff by
Thomas J. Pliura, M.D., J.D., his attorney

**Jury Demand**

Plaintiff demands a trial by jury on all counts herein.

By: s/THOMAS J. PLIURA_____
Angel Navarro, Plaintiff by
Thomas J. Pliura, M.D., J.D., his attorney

Thomas J. Pliura, M.D., J.D., P.C.
P.O. Box 130
LeRoy, IL 61752
Telephone: (309)962-2299
Fax: (309)962-4646
tom.pliura@zchart.com