IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANGEL NAVARRO,            )
#R-09328,                 )
                          )
        Plaintiff,        )
                          )   Case No. 18−cv−143−JPG
vs.                       )
                          )
WEXFORD HEALTH SOURCES, INC., )
JOHN TROST,               )
STEVEN RITZ, and          )
MOHAMMED SIDDIQUI,        )
                          )
        Defendants.       )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Angel Navarro, an inmate in Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment and Illinois law. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

### **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Wexford Health Sources, Inc. ("Wexford") "utilize[s] a system in which its employed or contracted physicians could not directly make a referral of an inmate for specialty care services including certain diagnostic procedures or surgical consultation without the permission of Wexford through a review process known as 'collegial review.'" (Doc. 1, p. 3).

On or around December 13, 2016, while Plaintiff was playing basketball at Menard, he "suffered an acute injury to his left ankle." *Id.* On or around December 15, 2016, Plaintiff was first seen at Menard health center. *Id.* Plaintiff had no feeling in his foot, there was extensive bruising on his left heel, he had "pain with palpation over his left Achilles tendon," and he "was described as being unable to flex his foot." *Id.* "The provider's assessment was a possible Achilles tendon rupture" and an "x-ray of the ankle was ordered and the Plaintiff was recommended for a referral outside the prison for an MRI of the injured lower extremity." *Id.*

Plaintiff was not seen by a physician and was instead seen by a nurse. He "was not provided crutches or any type of splint or immobilization boot to stabilize his left lower leg and ankle." *Id.* He has to walk on his injured left ankle, with the ruptured Achilles tendon. *Id.*

During this time, Wexford "had a written policy pertaining to treatment of patients with a ruptured Achilles tendon, requiring urgent referral of the patient to an orthopedic specialist, splinting, and crutches." (Doc. 1, p. 4). On or about December 16, "the x-ray report indicated that Plaintiff was to be evaluated for an Achilles tear. A follow up MRI of the ankle was advised by the radiologist to further evaluate the Achilles tendon." *Id.* Around December 20, 2016, Trost presented Plaintiff for collegial review, seeking approval from Wexford for the MRI. *Id.* Wexford denied the request, and an ultrasound of the left Achilles was proposed as an alternative. *Id.* "A medical furlough note indicated Plaintiff was supposed to have a splint to keep the Achilles immobile and for him to remain non-weight bearing." *Id.* Plaintiff was never provided a splint or crutches. *Id.* He instead was "forced to walk on his injured left ankle and the ruptured Achilles tendon since the injury occurred." *Id.*

On or about December 22, 2016, Plaintiff was evaluated by Mohammed Siddiqui. *Id.* Siddiqui found Plaintiff's range of motion in his left ankle to be restricted. *Id.* He had pain, swelling, and bruising in his left foot. *Id.* "Plaintiff was unable to move his foot up and down, or sideways." *Id.* The note, which indicates that the request for an MRI was rejected at "collegial review" by Wexford, did not provide the basis of the rejection. *Id.* Plaintiff still awaited the ultrasound and had not been provided or placed on crutches, given a splint, or had his ankle immobilized. *Id.* Plaintiff was "forced to continue to walk" on the injury. *Id.*

On or around January 17, 2017, Plaintiff was seen by a physician at Menard. *Id.* Plaintiff was walking with a limp and had pain in his ankle. *Id.* "They were still awaiting the

ultrasound of the Achilles tendon." (Doc. 1, pp. 4-5). A follow-up was planned two weeks from then, and Plaintiff was not provided with or placed on crutches or a splint. (Doc. 1, p. 5). As of January 19, 2017, Plaintiff had not received an ultrasound of his Achilles tendon injury. *Id.* "A repeat x-ray of the left ankle was ordered. There was a history of chronic pain. The x-ray report, dated Jan. 23, showed little change noted in the x-rays since the prior x-ray of 12/16." *Id.* On January 30, 2017, Plaintiff was seen by Dr. Siddiqui. *Id.* "He was found to have restricted range of motion at the left ankle." *Id.* Plaintiff had still not received an ultrasound. *Id.* "The note indicated 'Achilles tendon injury' had occurred 6 weeks earlier." *Id.* Plaintiff was not provided with crutches or a splint and was forced to continue to walk on his ruptured Achilles tendon. *Id.*

On February 16, 2017, the ultrasound on Plaintiff's left Achilles tendon was performed. *Id.* The ultrasound showed a complete rupture of the Achilles tendon, with retracted proximal stumps. *Id.* "There was marked thickening of the retracted proximal and distal stumps, consistent with severe underlying tendinosis. A complete rupture of the Achilles tendon was noted at approximately 4.6 cm above the calcaneal insertion. A prominent gap was noted due to the rupture with a contour deformity." *Id.* Despite this, Plaintiff was not provided with crutches or a splint. He was forced to continue to walk on the injured extremity. *Id.*

On or about February 22, 2017, Dr. Trost ordered an orthopedic consult. (Doc. 1, p. 6). Another collegial review was scheduled for March 1, for the purpose of determining whether an orthopedic consult was warranted. *Id.* The note indicated Dr. Ritz was to review the request for referral and make a decision. *Id.* Around March 7, 2017, Plaintiff was scheduled for an orthopedic consult on March 16, 2017. *Id.* On March 9, 2017, Plaintiff filed a grievance complaining that he had not been receiving adequate healthcare. *Id.* He complained of pain and an inability to perform normal activities and tasks. *Id.* He could not walk normally or jog. *Id.*

"He complained they had failed to appropriately follow-up on his left Achilles injury." *Id.*

Around March 16, 2017, Plaintiff was evaluated by the office of orthopedic surgeon, John Wood. *Id.* He "was identified as having an Achilles tendon rupture. He had left ankle pain with weakness on his left side with aching. He was noted to have pain with dorsiflexion, as well as weakness. Physical therapy was recommended." *Id.* Around March 20, 2017, Dr. Siddiqui ordered physical therapy, as recommended by Dr. Wood, and ordered an orthopedic follow-up. *Id.* On March 29, 2017, Plaintiff wrote a letter to Ms. Allsup seeking information on the status of his grievance. *Id.* At that point, he had not started physical therapy. *Id.* The note indicated that he was to be scheduled soon. *Id.*

Around April 20, 2017, Plaintiff was seen at the Orthopedic Institute of Southern Illinois. *Id.* "The note indicates he had not had any physical therapy during the last sixty (60) days." *Id.* An orthopedic test indicated a rupture of his Achilles tendon. *Id.* He was also noted to have gait abnormalities. (Doc. 1, pp. 6-7). He was seen by physical therapist, Eric Osman. (Doc. 1, p. 7). A response from the grievance officer denying Plaintiff's grievance was issued on April 25, 2017. *Id.* On May 11, 2017, the Chief Administrative Officer concurred with the denial. *Id.*

Around June 1, 2017, Plaintiff's condition was presented to collegial review for an orthopedic consult. *Id.* It was approved, and the note indicated that he was to be scheduled soon. *Id.* On or about June 6, 2017, Plaintiff complained he was not getting any better, despite physical therapy. *Id.* He was noted to have a limp while walking, and he was still experiencing pain. *Id.* Around August 23, 2017, the Administrative Review Board formally denied Plaintiff's grievance. *Id.* As of January 26, 2018, Plaintiff had not undergone surgery for repair of his ruptured Achilles tendon, and he had not yet had his foot immobilized. *Id.*

Plaintiff seeks monetary and injunctive relief. (Doc. 1, pp. 10, 12, 15, 17, 19, 22, 23, 25).

## Discussion

Plaintiff divided this action into 8 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Medical negligence claim against Trost and Wexford for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

**Count 2 –** Deliberate indifference claim against Trost and Wexford for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

**Count 3 –** Medical negligence claim against Ritz and Wexford for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

**Count 4 –** Deliberate indifference claim against Ritz and Wexford for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

**Count 5 –** Medical negligence claim against Siddiqui and Wexford for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

**Count 6 –** Deliberate indifference claim against Siddiqui and Wexford for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

**Count 7 –** Deliberate indifference claim against Wexford for maintaining a policy of denying and delaying needed medical services in favor of ineffectual treatments and denial of care in order to save costs, resulting in inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

**Count 8 –** Medical Practice Act of 1987 (225 ILCS 60 *et seq.*), Physician Assistant Practice Act of 1987 (225 ILCS 95 *et seq.*), and Nurse Practice Act (225 ILCS 65 *et seq.*) claims against Wexford for superseding the independent professional clinical judgment of its medical providers through its collegial review process, resulting in inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Counts 1, 3, and 5 – Illinois Medical Negligence

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court has supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a).[1] A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

---

[1] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff filed only one affidavit and report despite the fact that there are four defendants. The affidavit and report filed refer to each of the defendants, as opposed to singling out one in particular. Because the Court cannot determine which defendant to assign the presently available affidavit and report to, each of Plaintiff's medical negligence claims, Counts 1, 3, and 5, shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit(s), if he desires to seek reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissals of Counts 1, 3, and 5 may become dismissals with prejudice. *See* Fed. R. Civ. P. 41(b).

### Counts 2, 4, 6 and 7 – Deliberate Indifference

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme

---

effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622.

Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Court finds that Plaintiff's ruptured Achilles tendon constitutes a serious medical need so as to satisfy the objective standard. Plaintiff has also sufficiently alleged that Trost, Ritz, and Siddiqui were deliberately indifferent to this need when they, among other things, failed to treat Plaintiff's injury, did not refer him to an outside specialist in a timely manner, failed to ensure he received necessary tests, and neglected to provide him with a splint or crutches, leaving him to walk on his injury for a prolonged period of time. Counts 2, 4, and 6 will therefore proceed against Trost, Ritz, and Siddiqui, respectively.

Further, the Seventh Circuit has held that the *Monell* theory of municipal liability applies in § 1983 claims brought against private companies that act under color of state law. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (citing *Shields v. Ill. Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014) (noting every circuit court that has addressed the issue has extended the *Monell* standard to private corporations acting under color of state law). In order to prevail on this claim against Wexford, Plaintiff must establish that its policies, customs, or practices caused a constitutional violation. *Whiting*, 839 F.3d at 664 (citing *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009)).

Plaintiff specifies several policies, customs, or practices espoused by Wexford that allegedly caused the delay and denial of treatment for his ruptured Achilles tendon by Siddiqui,

Trost, and Ritz. Counts 2, 4, 6, and 7 will therefore also proceed against Wexford.

## Count 8 – Medical, Physician Assistant, and Nurse Practice Acts

As his final claim, Plaintiff alleges that Wexford violated the Medical Practice Act of 1987 (225 ILCS 60 *et seq.*), Physician Assistant Practice Act of 1987 (225 ILCS 95 *et seq.*), and Nurse Practice Act (225 ILCS 65 *et seq.*) when it superseded the independent professional clinical judgment of its medical providers through its collegial review process by relying on the medical opinions of physicians not licensed in Illinois, who do not personally examine patients, to determine the course of treatment for inmates. Plaintiff claims this resulted in inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon. It appears that one of more of these provisions creates a private right of action for injunctive relief. *See* 225 ILCS 95/22.1. Based on the facts in the Complaint, the Court cannot yet say that Plaintiff is ineligible to petition for relief under these provisions. Count 8 will therefore proceed past threshold.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1**, **3**, and **5** are **DISMISSED** without prejudice for failure to comply with 735 Ill. Comp. Stat. §5/2-622(b).

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claim(s) in **COUNTS 1**, **3**, and **5** against Defendants **TROST**, **RITZ**, **SIDDIQUI**, and **WEXFORD**, Plaintiff shall file the required affidavit(s) pursuant to 735 Ill. Comp. Stat. §5/2-622, within 35 days of the date of this order (on or before March 21, 2018). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNTS 1**, **3**, and **5** may become a dismissal **with prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **TROST** and **WEXFORD**.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **RITZ** and **WEXFORD**.

**IT IS FURTHER ORDERED** that **COUNT 6** shall **PROCEED** against **SIDDIQUI** and **WEXFORD**.

**IT IS FURTHER ORDERED** that **COUNTS 7** and **8** shall **PROCEED** against **WEXFORD**.

Plaintiff's counsel shall be responsible for effecting service of process in this case.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: February 14, 2018**         s/J. Phil Gilbert
                                      United States District Judge