IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGEL NAVARRO, )<br> )<br> Plaintiff, )<br> )<br>vs. )<br> )<br>WEXFORD HEALTH SOURCES, INC., )<br>JOHN TROST, STEVEN RITZ, )<br>and MOHAMED SIDDIQUI, )<br> )<br> Defendants. ) | Case No. 18-cv-00143-JPG |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment filed by Defendants Wexford Health Sources, Inc. and Steven Ritz on February 21, 2020. (Doc. 56). For the reasons set forth below, the Motion shall be **GRANTED in part** and **DENIED in part**.

### PROCEDURAL HISTORY

Plaintiff Angel Navarro, Sr. (Inmate No R09328) is currently incarcerated at Menard Correctional Center. He filed this civil rights action pursuant to 42 U.S.C. § 1983 for the denial of medical treatment for his ruptured Achilles tendon. (Docs. 1 and 9). He brought this lawsuit against his Menard doctors (Drs. John Trost and Mohammed Siddiqui), their employer (Wexford Health Sources, Inc.), and a Wexford physician (Dr. Ritz) for deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, and for medical negligence, in violation of Illinois state law. Plaintiff also asserted a statutory claim against Wexford.

On June 4, 2018, Wexford and Dr. Ritz filed a Motion to Dismiss several claims against them. (Docs. 25 and 26). Magistrate Judge Reona Daly issued a Report and Recommendation

1

granting in part and denying in part their motion on January 23, 2019. (Doc. 42). This Court adopted Magistrate Judge Daly's Report and Recommendation in its entirety on February 20, 2019. (Doc. 44). The case now focuses on the following claims:

> **Count 1 -** Medical negligence claim against Trost and Wexford for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.
>
> **Count 2 -** Deliberate indifference claim against Trost for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.
>
> **Count 3 -** Medical negligence claim against Ritz and Wexford for inadequate and untimely treatment of Plaintiff's Achilles tendon.
>
> **Count 4 -** Deliberate indifference claim against Ritz for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.
>
> **Count 5 -** Medical negligence claim against Siddiqui and Wexford for inadequate and untimely treatment of Plaintiff's Achilles tendon.
>
> **Count 6 -** Deliberate indifference claim against Siddiqui for inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.
>
> **Count 7 -** Deliberate indifference claim against Wexford for maintaining a policy of denying and delaying needed medical services in favor of ineffectual treatments and denial of care in order to save costs, resulting in inadequate and untimely treatment of Plaintiff's ruptured Achilles tendon.

(*See* Docs. 42 and 44).

On February 21, 2020, Dr. Ritz and Wexford filed a Motion for Summary Judgment on all claims still pending against both defendants. (Docs. 56 and 57). Dr. Ritz seeks dismissal of Counts 3 and 4, and Wexford seeks dismissal of Counts 1, 3, 5, and 7. (*Id*.). Defendants argue that Plaintiff cannot produce any evidence to support a triable claim of deliberate indifference against Dr. Ritz in Count 4, medical negligence against either defendant in Counts 1, 3, 5, and 7, or vicarious liability against Wexford in Count 3. (*Id*.). On March 26, 2020, Plaintiff filed a response in opposition to the motion that includes 375 pages of depositions and medical records

that are largely unaddressed by either party. (Doc. 59). Defendants filed a reply on March 31, 2020, in which they characterize several of Plaintiff's arguments as false or speculative. (Doc. 62).

### BACKGROUND

The Court gleans the following facts from the summary judgment submissions: Plaintiff suffered a left ankle injury on or around December 13, 2016. (Doc. 9, ¶ 13). He was seen in the prison's health care unit two days later. (Doc. 9, ¶ 15). Plaintiff maintains that an Achilles tendon rupture was clinically confirmed on December 15, 2016, but his medical records note a "suspected Achilles tendon rupture" that day. (Ex. 2 at 1). X-rays were taken between December 16-19, 2020.[1] (Doc. 9, ¶ 15). An x-ray report indicates that "the visualized Achilles tendon appears continuous." (*Id.*). The radiologist recommended a follow-up MRI, if clinically indicated. (Ex. 1) (Nord. Dep. 33:21-34:15; Ex. 2, Med. Recs. 1) (Ex. 2 at 2).

On or around December 20, 2016, Wexford's Collegial Review Board considered Plaintiff's case, including the MRI request. (Ex. 2, Med. Recs. 3; Doc. 10 at 3). Dr. Ritz denied the request for an MRI but authorized an ultrasound instead. (*Id.*). Imaging studies are generally completed using one or the other. (Ex. 1) (Nord. Dep. 71:10-24). Dr. Ritz did not indicate whether the ultrasound referral was urgent. (Ex. 2, Med. Recs. 3; Doc. 10 at 3). This was despite Wexford's medical guidelines mandating urgent treatment for Achilles tendon ruptures. (Ex. 6). Dr. Ritz also did not order a referral to an orthopedic specialist at that time, despite his authority to do so. (Ex. 2, Med. Recs. 3). Plaintiff was seen by several Wexford providers, none of whom expedited treatment. (*Id.*). When Plaintiff finally underwent an ultrasound of his left ankle on February 16, 2017, an Achilles tendon rupture was confirmed. (Ex. 2, Med. Recs. 11; Doc. 9, ¶ 23).

---

[1] The parties provided different dates when the x-ray occurred: December 16 and 19, 2020.

3

On March 1, 2017, Dr. Ritz and Dr. Trost discussed Plaintiff's need for an orthopedic referral, and Dr. Ritz approved the referral on March 3, 2016.  (Doc. 10 at 15).  Plaintiff was seen by Dr. Wood for an orthopedic consult on March 16, 2017.  (Doc. 9, ¶ 27).  (Ex. 2, Med. Recs. 19).  The specialist recommended physical therapy.  (Doc. 9, ¶ 29).

On March 29, 2017, Plaintiff's case was again presented in Collegial Review, and his referral request for physical therapy evaluation and an orthopedic follow-up with Dr. Wood were approved.  (Doc. 10 at 32).  On March 31, 2017, Plaintiff was scheduled for a follow-up with Dr. Wood.  (Doc. 10 at 33).  On April 6, 2017, Plaintiff was scheduled for a physical therapy evaluation.  (Doc. 10 at 34).  He attended a physical therapy evaluation at Dr. Wood's office on April 20, 2017, and a follow-up appointment with a physician's assistant on April 27, 2017.  (Doc. 10 at 33-34).

On June 1, 2017, Plaintiff's case was again presented at Collegial Review, and Dr. Ritz and Dr. Siddiqui authorized a referral for another orthopedic follow-up.  (Doc. 10 at 50-51).  On June 5, 2017, the follow-up was scheduled for June 30, 2017.  (Doc. 10 at 52).  Dr. Wood met with Plaintiff on that date.  (Doc. 10 at 52).

Due to delays in imaging, referrals, and treatment, Plaintiff suffered permanent injury, prolonged pain, and lasting numbness.  (Ex. 4, Navarro Dep. 41:16, 42:8-23, 93:10-11, 94:1).  He blames Wexford for policies and practices that delayed his treatment.  In cases of complete Achilles tendon tears, Plaintiff's expert maintains that surgical repair of the injury should occur within seven to ten days.  (Ex. 1) (Nord. Dep. 37:23-38:10).  Therefore, when a patient presents with a torn Achilles tendon, the standard procedure is to order an urgent imaging study within 24 hours of the injury.  (Ex. 1) (Nord. Dep. 42:1-44:12).  Wexford required Utilization Management review of all requests for an outside referral, even when the request was for emergent care.  (Exs.

5 and 6, Utilization Management Policies; Ex. 2, Med. Recs. 3).  This caused delays in Plaintiff's care.  And while awaiting proper diagnosis and treatment, Plaintiff was denied crutches and a splint.  Wexford's guidelines called for both until surgery was completed.  (Ex. 4) (Navarro Dep. 82:16-83:1) (Ex. 2 Med. Recs.) (Ex. 6) (Ex. 1, Nord. Dep. 107:23-108:8 and 140:3-6; Ex. 3).  Without either, Plaintiff endured extreme pain.  (*Id*.).  His left Achilles tendon can no longer be surgically repaired; his injury is permanent.  (Ex. 1, Nord. Dep. 37:23-38:10, 77:1-14; 80: 4-25).

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rule 56 imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is unnecessary.  *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (citing *Celotex*, 477 U.S. at 323).  This requirement is not particularly onerous.  The movant's initial burden "may be discharged by 'showing'—that is, point[ing] out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 1168 (citing *Celotex*, 477 U.S. at 325)).

Once the moving party makes this showing, however, the nonmoving party must then "make a showing sufficient to establish the existence of an element essential to that party's case."  *Id*. (citing *Celotex*, 477 U.S. at 322)).  This requires going "beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict" in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (internal quotation marks and citation omitted).

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the

relative weight of conflicting evidence." *Anderson*, 477 U.S. at 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). The Court must instead "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

Dr. Ritz and Wexford have failed to meet their initial burden of showing that there is no genuine dispute as to any material fact. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants did not present the Court with an outline of *any* material facts, let alone proposed undisputed findings of fact. They instead argued that Plaintiff lacks *any* evidence to support his claims of deliberate indifference and medical negligence against them. (Doc. 57). In their opening brief, Dr. Ritz and Wexford allude to no evidence from the record, referring instead to allegations in the Amended Complaint. This would appear to support their position that the record is devoid of evidence to support Plaintiff's claim.

But Plaintiff responded with 375 pages of deposition testimony, medical records, and Wexford's policies, virtually all of which would be admissible as evidence at trial if properly authenticated. (Doc. 59). Plaintiff did not file any affidavits or declarations to provide context for his voluminous exhibits or submit proposed undisputed findings of fact. For his part, Plaintiff simply cited his medical records, his deposition testimony, his expert's testimony, and Wexford's policies in his response brief.

To a large extent, the parties rely on the Court to sort through the record and decide which facts are material and undisputed. However, the Court is under no obligation to do so. Rule 56

authorizes summary judgment only if "**the movant**" shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (emphasis added). The movants include Dr. Ritz and Wexford, and they have not met their burden.

Moreover, a party asserting that a fact "cannot be or is genuinely disputed" must support the assertion by:

   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motions only), admissions, interrogatory answers, or other materials; or

   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*See* FED. R. CIV. P. 56(c)(1)(A), (B). Rule 56(c) provides that the Court "need only consider cited material." FED. R. CIV. P. 56(c)(3). Consistent with Rule 56(c), the Court has considered only material cited by the parties. The cited material is summarized in the background section above. In light of this material, the Court concludes that genuine issues of material fact preclude summary judgment in this case, with one exception discussed below.

## Medical Negligence Claims

## Counts 1, 3, and 5

Illinois state law governs the medical negligence claims against Dr. Ritz in Count 3 and against Wexford in Counts 1, 3, and 5. An Illinois medical negligence claim requires the plaintiff to show: (1) the applicable standard of care; (2) the defendant breached the standard of care and was negligent; and (3) and the breach was a proximate cause of the plaintiff's injury. *Chambers v Igram*, 858 F.2d 351, 355 (7th Cir. 1988). Expert testimony that a defendant's actions were negligent may be enough to establish the existence of a duty and breach. *Id.* (citing *Chamness v. Odum*, 80 Ill. App. 3d 98 (1979)).

7

In Count 3, Plaintiff claims that Dr. Ritz was negligent in his care and treatment of Plaintiff's ruptured Achilles tendon. He offers personal and expert testimony in support of this position. Though Defendants characterize some of the testimony as speculative, genuine issues of material fact are still in dispute regarding Ritz's obligation to ensure timely diagnosis, prompt treatment, and timely referrals for care. Count 3 survives summary judgment against Dr. Ritz.

In Counts 1, 3, and 5, Plaintiff claims that Wexford was negligent. Plaintiff challenges numerous policies, customs, and bad acts of Wexford, including the policy prohibiting on-site medical staff from making decisions to refer inmates for emergent medical care; the policy of denying or delaying MRI and other diagnostic imaging for Achilles tendon injuries; the policy of requiring collegial review by a physician who does not examine the plaintiff before approving treatment; the policy of delaying surgical referrals; and the policy of encouraging less expensive and less effective treatment options for inmates. Plaintiff maintains that these policies resulted in the negligent delay or denial of his medical care. These policies, customs, or practices were carried out by Dr. Trost (Count 1), Dr. Ritz (Count 2), and Dr. Siddiqui (Count 5). Because Wexford, itself, may have been negligent, these claims will proceed against it. In addition, vicarious liability may attach to Wexford because it employed Dr. Trost, Dr. Ritz, and Dr. Siddiqui during the events giving rise to this action. *See Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014) (pointing out that "[m]edical negligence by one of Wexford's employees could support liability under state tort law but not the Eighth Amendment"). Drs. Trost and Siddiqui did not request summary judgment, and the case against them will proceed to trial. Given all of this, Wexford will remain subject to the negligence claim in Counts 1, 3, and 5.

**Deliberate Indifference Claims**

The Eighth Amendment governs the medical deliberate indifference claim against Dr. Ritz in Count 4 and against Wexford in Count 7. This Amendment prohibits cruel and unusual punishment of incarcerated persons. *See* U.S. CONST., amend. VIII. When considering a claim based on the denial of medical care, the Court applies a two-part analysis. *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). First, the Court must determine whether the plaintiff suffered from a sufficiently serious medical condition, from an objective standpoint. *Id*. Second, the Court must determine whether each defendant responded with deliberate indifference, from a subjective standpoint. *Id*. The parties do not dispute the objective seriousness of Plaintiff's injury, so both claims hinge on the second question—deliberate indifference.

## Count 4

With respect to Dr. Ritz, the question is whether he responded to Plaintiff's Achilles tendon injury with deliberate indifference. This question cannot be resolved on summary judgment. The parties dispute virtually everything about Plaintiff's diagnosis and treatment, including the diagnosis itself, the proper diagnostic tests, delays in diagnostic testing, the proper treatment, the need for emergency surgery (or surgery at all), and the delays in obtaining alternative treatment. Dr. Ritz's role in Plaintiff's diagnosis and treatment is inextricably intertwined with these factual disputes. Lingering questions about Dr. Ritz's role in Plaintiff's diagnosis and treatment preclude summary judgment on the Eighth Amendment claim in Count 4.

## Count 7

With respect to Wexford, the question is slightly different. As a private corporation, Wexford cannot be held liable under Section 1983, unless a constitutional violation occurred as a result of a policy, custom, or practice of deliberate indifference by the corporation itself. *Shields*, 746 F.3d at 789. *Respondeat superior* liability is inapplicable in this context, so Wexford cannot

be liable for an Eighth Amendment violation caused by one of its employees simply because of the employment relationship. *Id.* (citation omitted). Plaintiff can show deliberate indifference through an express written policy, an implicit policy, or a series of bad acts of Wexford that raise the inference of deliberate indifference. *McKay v. Odom*, 726 F. App'x 493, 494 (7th Cir. 2018).

Plaintiff claims that Wexford's policy of denying or delaying needed medical services in favor of ineffectual treatment and denial of care simply to save costs caused inadequate treatment of Plaintiff's Achilles tendon rupture. This claim remains undeveloped. Plaintiff has not presented any evidence that cost concerns played any role in the delay or denial of his treatment. He has not put forth sufficient evident to survive Wexford's motion for summary judgment on Count 7, and this claim shall be dismissed with prejudice.

### DISPOSITION

**IT IS HEREBY ORDERED** that Defendant Ritz and Wexford's Motion for Summary Judgment (Doc. 56) is **GRANTED in part and DENIED in part,** as follows:

- **WEXFORD** is **GRANTED** summary judgment on **COUNT 7**, and this claim is dismissed with prejudice; judgment to enter at the close of this case.

- **WEXFORD** is **DENIED** summary judgment on **COUNTS 1, 3,** and **5**.

- **RITZ** is **DENIED** summary judgment on **COUNTS 3** and **4**.

**IT IS SO ORDERED**.

**DATED: 9/30/2020**　　　　　　　　　　　s/J. Phil Gilbert
　　　　　　　　　　　　　　　　　　　　**J. PHIL GILBERT**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**